IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

WILLIAM DAVIS                                                          PLAINTIFF

V.                              Case No. 3:25-CV-00076-BBM

FRANK BISIGNANO,[1] Commissioner,
Social Security Administration                                         DEFENDANT

## ORDER

Plaintiff William Davis ("Davis") applied for Title II disability benefits and Title XVI supplemental security income on November 22, 2021, alleging he became disabled within the meaning of the Social Security Act on August 1, 2021. (Tr. at 17). His applications were denied initially and upon reconsideration. *Id*. Following a hearing, the Administrative Law Judge ("ALJ") found that Davis was not disabled. (Tr. at 17–33). The Appeals Council then denied his request for review. (Tr. at 1–6). The ALJ's decision now stands as the final decision of the Commissioner, and Davis has requested judicial review. For the reasons stated herein, the decision of the Commissioner is affirmed.

## I.    THE COMMISSIONER'S DECISION

At step one of the five-step sequential process,[2] the ALJ found that Davis had not

---

[1] On May 7, 2025, Frank Bisignano was sworn in as Commissioner of the Social Security Administration ("the Commissioner"). Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Bisignano is automatically substituted as the Defendant.

[2] The ALJ must determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

engaged in substantial gainful activity since the alleged onset date of disability. (Tr. at 20). The ALJ listed disorder of the cervical spine; disorder of the lumbar skeletal spine; osteoarthritis of the hands, knees, feet, and ankles; bilateral foot drop; diabetes mellitus II with proliferative retinopathy; macular edema; and neovascular glaucoma of both eyes as severe impairments. *Id*. After finding at step three that none of Davis's impairments—individually or combined—met or equaled a listed impairment, the ALJ determined that Davis had the residual functional capacity ("RFC") to perform work at the light-exertional level, except that he is unable to use his lower extremities for foot controls or pedals; (2) he is unable to climb ladders, ropes, or scaffolds; (3) he can engage in frequent fingering and handling with the bilateral upper extremities; (4) he is limited to ambulation on level surfaces; (5) he is precluded from ambulating on agricultural or construction terrains; (6) he cannot work at unprotected heights; and (7) he is precluded from work requiring bifocal vision. (Tr. at 21–22).

The ALJ determined that Davis was unable to perform any past relevant work but could perform other jobs existing in significant numbers in the national economy. (Tr. at 30–33). Consequently, the ALJ concluded that Davis was not disabled. *Id*.

## II.    DISCUSSION

### A.    Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is "supported by substantial evidence on the record as a whole and whether it is based on legal error." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). "Substantial evidence is that which a 'reasonable mind might accept as

adequate to support a conclusion,' whereas substantial evidence on the record as a whole entails 'a more scrutinizing analysis.'" *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted). "Our review 'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision. . . . [W]e also take into account whatever in the record fairly detracts from that decision.'" *Gann v. Berryhill*, 864 F.3d 947, 950–51 (8th Cir. 2017) (citation omitted). "Reversal is not warranted, however, 'merely because substantial evidence would have supported an opposite decision.'" *Reed*, 399 F.3d at 920 (citation omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted).

## B.    Davis's Arguments on Appeal

Davis asserts two grounds for reversal: (1) that the RFC was not supported by substantial evidence, (Doc. 12 at 25); and (2) that the ALJ erred in evaluating the persuasiveness of the medical opinions, *id*. at 31. After a brief review of the medical record evidence, the Court will address each of Davis's arguments, in turn.

### 1.    Davis's Medical History

The record reveals that Davis routinely had high blood pressure readings, as well as

issues with blood sugar related to diabetes, but he chose not to monitor his glucose levels at home and did not take his medicine as prescribed for his conditions. (Tr. at 413–17, 440–60, 532–34, 648–60). On July 20, 2022, Davis underwent a consultative physical examination, ordered by the Social Security Administration ("SSA"). (Tr. at 575-79). He was examined by Dr. Blake St. Clair. *Id.* Davis told Dr. St. Clair that he could stand without much difficulty. *Id*. He further stated that he had trouble tolerating medication and was not on any diabetes medications. *Id*. Musculoskeletal exam showed osteoarthritis in his hands. *Id*. Davis could rise from a sitting position without assistance and could stand on his tiptoes and heels; he could tandem walk, but he had difficulty bending and squatting. *Id*. Grip strength was 5/5 with adequate motor movements and the ability to grasp objects bilaterally. *Id*. Dr. St. Clair diagnosed Davis with hand osteoarthritis, knee osteoarthritis, foot/ankle osteoarthritis, and diabetes mellitus. *Id*. Dr. St. Clair stated:

> Based on today's examination, and the objective evidence, I believe the claimant will be limited in lifting/carrying objects above 20 lbs due to knee, foot, and ankle osteoarthritis. Otherwise, the claimant should be able to sit, walk, stand, lift objects, hold a conversation, respond appropriately to questions, and carry out and remember instruction without limitations.

(Tr. at 578).

Davis saw a new primary care physician, Dr. Allison Green, at Unity Health Clinic on October 12, 2022. (Tr. at 590–91). Davis told Dr. Green that he was not taking medication for his leg swelling or diabetes. Dr. Green noted abnormal gait and feet "flop and slap." *Id*. She discussed starting medication, but Davis was "adamantly" opposed. *Id*. A year later, Davis saw Dr. Green, and she observed that he had missed multiple scheduled appointments. (Tr. at 710–14). She recommended MRIs of the lumbar and cervical spine

4

and of the brain. *Id.*

On October 26, 2023, Davis underwent a lumbar MRI, which showed moderate disc herniation and moderate stenosis and bilateral facet arthropathy, plus partial sacralization at L5. (Tr.at 656, 674–75, 704–05). A head MRI was suspicious for occlusion, but no acute intracranial process was identified. (Tr. at 672, 702–03). A cervical MRI showed flattening of the normal lordosis, small diffuse posterior disc herniation, and diminished hypodensity. (Tr. at 656–57, 669–70, 700–01).

At a neurosurgical appointment on November 1, 2023, Davis reported pain and stiffness in his bilateral lower legs. (Tr. at 650–58). He ambulated with a cane and had notable gait and balance instability. *Id.* He reported a back and leg pain level of 5 out of 10. *Id.* Davis had some swelling, weakness, and numbness in extremities, but normal range of motion in his neck. *Id.* He had no pain with range of motion in the lumbar spine, and SI joints were normal. *Id.* Davis had slightly decreased grip and finger strength and bilateral foot drop. *Id.* His doctor scheduled Davis for physical therapy, but Davis didn't go. *Id.*

A November 2023 Computed Tomography Angiography ("CTA") of Davis's neck showed convex spinal curvature, flatting of the normal lordosis, mild calcification, and opacification reflecting retrograde flow in the distal left vertebral artery. (Tr. at 664–65). A CTA of Davis's head showed opacification of the distal left vertebral artery, but no stenosis, occlusion, or thrombosis. (Tr. at 662–63).

At a November 8, 2023 appointment with Dr. Green, Davis told her he was taking his Lisinopril HCTZ for high blood pressure and felt better. (Tr. at 679–83). He refused to take his blood sugar medicine as prescribed, however. *Id.* Davis also refused to take insulin.

*Id*. Furthermore, he declined statins. *Id*. Dr. Green wrote a letter stating that Davis was unable to work due to his multiple conditions. (Tr. at 695). Additionally, Dr. Green completed a medical source statement dated November 21, 2023, opining that Green could not even perform sedentary work and could not maintain a full-time work schedule. (Tr. at 697–98). He would need to avoid all exposure to high heat, high humidity, fumes, odors, and gases and must avoid moderate exposure to solvents/cleaners, chemicals, and sunlight, and must avoid concentrated exposure to perfumes. *Id*. Dr. Green said that Davis would miss more than three days of work per month. *Id*. She said his limitations were chronic and permanent. *Id.*

On March 27, 2024, Davis underwent a nerve-condition study on his upper and lower extremities.[3] (Doc. 12, Exh. A). The study showed moderate to severe diffuse motor and sensory neuropathy in the bilateral upper extremities and severe diffuse motor and sensory polyneuropathy in the bilateral lower extremities. *Id*.

Davis had cataract surgery on both eyes before the relevant time period. (Tr. at 473–75). He was seen at Southern Eye Associates on December 11, 2023, after no appointments for nearly three years. (Tr. at 645). He was diagnosed with neovascular glaucoma, proliferative diabetic retinopathy, retinal traction detachment of the right eye, and pseudo myopia in both eyes. *Id*. Davis was prescribed medication, and he followed up on December 13, 2023. (Tr. at 644). At that appointment, he said his vision was mildly improved*. Id*. In February 2024, Davis underwent intravitreal Avastin injections in both

---

[3] This evidence was submitted to the Appeals Council. The Appeals Council found the evidence did not show a reasonable probability of changing the outcome and did not exhibit the evidence. (Tr. at 2).

eyes. (Tr. at 731–37).

The two state-agency medical experts reviewed the record and found that Davis could perform light work with additional postural and environmental limitations. (Tr. at 29–30).

### 2.    The Assigned RFC Is Supported By Substantial Evidence.

Davis maintains that the RFC did not incorporate all of his limitations and that he cannot perform the requirements of light work. (Doc. 12 at 25–30). In support of his arguments, however, he reiterates his subjective complaints and restates the objective findings, which, taken alone, do not provide a basis to change the RFC. *Id*. Davis also claims that the Appeals Council erred in not making the nerve-conduction study part of the record. *Id*. at 29–30.

In determining Davis's RFC, the ALJ considered Davis's subjective complaints, his noncompliance with treatment (including refusal to take medication as prescribed and missing scheduled appointments),[4] his improvement over time (and improvement with Lisinopril),[5] and the medical imaging showing mild-to-moderate conditions (including grossly normal consultative examination findings). (Tr. at 22–30). The mild-to-moderate objective imaging findings do not suggest that light work was too strenuous for Davis. In addition, the ALJ reviewed the state agency opinions and limited Davis even more than they suggested. *Id*. at 29–30. He discussed Davis's ability to perform daily activities, like

---

[4] A failure to follow a recommended course of treatment weighs against a claimant's credibility. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005).

[5] Improvement in condition supports an ALJ's finding that a claimant is not disabled. *See Locher v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992); (Tr. at 679–83).

doing biblical research and ministering to his congregation. (Tr. at 23). Lastly, according to medical records, Davis did not treat the conditions that he claims are disabling. Indeed, Davis's noncompliance with treatment throughout the relevant time-period undercuts his argument that the RFC failed to incorporate all of his impairments.

Davis also takes issue with the nerve-conduction study submitted to the Appeals Council, which Davis contends "directly contradicts the ALJ's finding that Davis can engage in frequent fingering and handling with both upper extremities and can ambulate with only minimal limitations . . . ." (Doc. 12 at 30). When the Appeals Council has considered new evidence and nonetheless declined review, the ALJ's decision becomes the final action of the Commissioner; the Court then has no jurisdiction to review the Appeals Council's action because it is a non-final agency action. *See Piepgras v. Chater*, 76 F.3d 233, 238 (8th Cir. 1996) (*citing Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). At this point, the Court's task is to decide whether the ALJ's decision is supported by substantial evidence in the record as a whole, including the new evidence submitted to the Appeals Council that was not before the ALJ. *Browning*, at 823. It must be reasonably likely that the Commissioner's consideration of this new evidence would have resulted in an award of benefits. *See Woolf v. Shalala*, 3 F.3d 1210, 1215 (8th Cir. 1993).

The Appeals Council did receive and review the nerve-conduction study, but it elected not to exhibit the evidence. (Tr. at 2). The Appeals Council found that the evidence did not show a reasonable probability of changing the ALJ's decision. *Id*. Upon review, the nerve-conduction study did not present anything showing a marked deterioration in condition. Rather, the study showed conditions aligning with the balance of the record

before the ALJ. Appropriately, the RFC incorporated all of Davis's credible limitations.

### 3.    The ALJ Properly Evaluated the Medical Opinions.

Davis argues that the ALJ did not properly evaluate the persuasiveness of the medical opinions, particularly those of Dr. St. Clair and Dr. Green. (Doc. 12 at 31). The Court disagrees.

The Administration promulgated regulations—effective March 27, 2017— governing how ALJs assess medical opinion evidence. Those rules provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2017). Instead, ALJs are required to analyze whether opinion evidence is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes: (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). An opinion is "more persuasive if it is supported by explanation and relevant objective medical evidence, and is consistent with other evidence in record," *Norwood v. Kijakazi*, No. 21-3560, 2022 WL 1740785, at *1 (8th Cir. May 31, 2022) (per curiam) (citing 20 C.F.R. §§ 404.1520c(c), 416.920c(c)). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Phillips v. Saul*, No 1:19-CV-34-BD, 2020 WL 3451519, at *2 (E.D. Ark. June 24, 2020) (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, at 5854, 5858 (Jan. 18, 2017), & Articulation Requirements for Medical Opinions and Prior Administrative Medical

Findings – Claims filed on or after March 27, 2017, SSA POMS DI 24503.030). An ALJ is not bound to rely on a particular medical opinion and can decline to incorporate any portion of an opinion that the ALJ deems inconsistent. *See McKinney v. O'Malley*, No. 23-3220, 2024 WL 1327965, at *1 (8th Cir. Mar. 28, 2024) (holding that ALJ was not required to adopt the exact limitations set forth in the opinions she found persuasive and that the RFC determination was supported).

The ALJ considered the opinion of Dr. St. Clair and found it partially persuasive. (Tr. at 26). He agreed with Dr. St. Clair's conclusion that Davis could perform light work and that Davis would be limited to lifting/carrying objects above 20 pounds due to knee, foot, and ankle osteoarthritis, finding those opinions to be consistent with Dr. St. Clair's own clinical findings. *Id*. The ALJ found the rest of Dr. St. Clair's opinion, including regarding Davis's ability to sit, stand, and lift objects, not persuasive because it lacked specificity and no meaningful limitations could be derived from those aspects of Dr. St. Clair's opinion. *Id*. The ALJ filled in any gaps with regard to those physical activities based on the state-agency opinions and his own findings. (Tr. at 29–30). The ALJ explained how he analyzed Dr. St. Clair's opinion, and the record supports the ALJ's findings.

The ALJ also evaluated Dr. Green's opinion that Davis could not work. (Tr. at 26–27). He properly pointed out that a finding by a doctor about a claimant's ability to work is an issue reserved for the Commissioner.[6]  He also addressed Dr. Green's more detailed opinion from November 2023. (Tr. at 27). He found the opinion that Davis could not

---

[6] *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (opinion about claimant's ability to work reserved to the Commissioner).

perform even sedentary work to be unpersuasive. *Id*. The ALJ gave good reasons for this, citing the medical findings and pointing out inconsistences in Dr. Green's opinion. *Id*. For example, the ALJ noted that Dr. Green's "extreme limitations" were based on Davis's abnormal neurological findings; however, Dr. Green never prescribed an assistive device or a brace and never prescribed any medication for Davis's neurological issues. *Id*. at 27–28.

The Court acknowledges that the ALJ cited the typical language that "the opinion is not consistent with the record as a whole" as part of his findings. *Id*. Davis says this is boilerplate language and is insufficient for finding a medical opinion unpersuasive. (Doc. 13 at 34). The ALJ, however, provided great detail about why he found Dr. Green's opinion inconsistent with the record. He cited medical evidence, like grossly normal musculoskeletal findings, Davis's pain questionnaire, Davis's hearing testimony, Davis's function reports, Davis's neurological exam findings, his lack of any prescribed medication for treatment of pain or neurological-related symptoms, and the fact that no doctor prescribed a cane or foot brace or gave him a handicap placard for his car. (Tr. at 24–29). The ALJ fully dispatched his duty to rule on the supportability and consistency of the medical opinions. The Court finds no error.

## III.    CONCLUSION

Substantial evidence on the record as a whole supports the Commissioner's decision. The finding that Davis was not disabled within the meaning of the Act is hereby AFFIRMED. Judgment will be entered for the Defendant.

11

IT IS SO ORDERED this 24th day of June, 2026.

_____
UNITED STATES MAGISTRATE JUDGE